**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**MARCUS DARNELL DIXON,**

> **Movant,**

**v.**                                                    **Case No. 3:10-cv-01143**
                                                          **(Criminal No. 3:08-00032)**

**UNITED STATES OF AMERICA,**

> **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (Docket No. 80). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having considered all of the evidence before the Court, the undersigned determines that Movant clearly is not entitled to relief under 28 U.S.C. § 2255; therefore, the undersigned finds that Movant is not entitled to an evidentiary hearing and respectfully recommends that his Motion be denied and this matter be dismissed from the docket of the Court.

## I.     <u>Factual and Procedural Background</u>

Movant is presently incarcerated in a Federal Correctional Institution in Beckley, West Virginia until March 13, 2018.[1] In January 2008, Movant was serving a sentence of home confinement on a drug charge. During that month, Movant sold cocaine base (crack) twice to undercover Drug Enforcement Administration (DEA) Special Agent Tom Bevins. (Docket No. 14 at 1–3). On January 3, 2008, Special Agent Bevins purchased 12 grams of crack from Movant for $650. (Docket No. 48 at 4–5). On January 8, 2008, Bevins purchased 22.3 grams of crack from Movant for $1,300. (*Id.* at 5). At the conclusion of the second transaction, Movant agreed to sell an additional two ounces of crack to Bevins. (*Id.* at 4). Subsequently, a federal search warrant was executed on Movant's home on January 14, 2008. (*Id.*). Law enforcement officers recovered 109.7 grams of crack, as well as $20,560 in cash, which included $20,000 found hidden in a love seat in Movant's bedroom. (*Id.*). The currency was contained in a large freezer bag and was bundled in increments of $1,000 with a mix of $20 and $50 bills. The remaining $560 was found on Movant's person in a search pursuant to his arrest. (Docket No. 48 at 4).

On May 10, 2007, United States Attorney, Charles T. Miller, made a motion requesting that the District Court impanel a grand jury in the Huntington, West Virginia division on July 10, 2007. Chief Judge David Faber subsequently ordered the impanelment of a grand jury in Huntington, West Virginia to be designated

---

[1] Unless otherwise noted, all facts in this section are taken from Movant's criminal case, *United States of America v. Dixon*, Case No. 3:08-cr-00032.

-2-

Huntington Grand Jury 2007. (Docket No. 100-6). On February 6, 2008, the grand jury returned an indictment charging Movant with two counts of distributing 5 grams or more of cocaine base and a third count of distributing 50 grams or more of cocaine base, all in violation of 21 U.S.C. § 841(a)(1). (Docket No. 14).  On May 12, 2008, Movant pled guilty to the third count of the indictment pursuant to a plea agreement. (Docket No. 34).  Also on May 12, 2008, Movant appeared before the Court at a plea hearing during which the Court found that Movant was competent and capable of entering an informed plea; that a factual basis existed for Movant's guilty plea, based on Movant's testimony that he possessed the crack cocaine with the intention of selling it and the corroborating testimony from the government's witness, Special Agent Bevins; that Movant understood the nature of the charges, the consequences of pleading guilty, and the constitutional and other legal rights being forfeited by pleading guilty; and that Movant's plea was voluntary. (Docket No. 40). On this basis, the Court accepted Movant's guilty plea and reserved acceptance of the plea agreement until sentencing. (*Id.*). Movant executed and filed a written plea of guilty which noted that his counsel fully explained the charges against him and that he received a copy of the Indictment before being called upon to plead. (Docket No. 34).

Movant's sentencing hearing took place on September 2, 2008. (Docket No. 49) At this hearing, Movant contested the Presentence Investigative Report's (PSIR) recommendation that the $20,560 found in Movant's home be converted to an equivalent amount of crack—102 grams, at the rate of $200 per gram. (Docket No. 59 at 3). Movant argued that the $560 found on his person on January 14,

2008 was the remainder of his most recent paycheck from his work as a cook at Holiday Inn. As to the $20,000 discovered in the love seat on January 14, 2008, Movant presented testimony purporting to demonstrate that more than $11,000 was a gift from family members to use for a down payment on a home for Movant's family. (Docket No. 59 at 16–17). Movant's mother testified that $5,300 was a gift collected from extended family and that another $6,000 was a gift from an uncle who had recently collected a personal injury settlement. (*Id.* at 16–18).

In response, the government emphasized the PSIR's finding that Movant's job was low-paying and that he had a wife and four children to support. (*Id.* at 24–25). The government produced Special Agent Bevins to testify regarding the currency found hidden in Movant's love seat. (*Id.* at 3–7). On direct examination, Bevins stated that the currency was found "in plastic, a large size freezer bag, and if I recall right, it was in denominations of a thousand dollars wrapped in a rubber band." (*Id.* at 5). Bevins testified that the manner in which the money was packaged and its concealment were consistent with it being the proceeds of drug trafficking. (*Id.* at 6). Bevins further testified that the money was made up of a $20, $50, and $100 bills. (Docket No. 59 at 6).

The District Court overruled Movant's objection and found Movant liable for the crack cocaine equivalent of $20,000. (*Id.* at 43). Based on its calculations,[2] the Court found that Movant was liable for more than 150 grams of crack. Accordingly, Movant's base offense level in combination with his criminal history

---

[2] The crack sold in the first two transactions plus the crack seized at Movant's house upon executing the search warrant plus the crack equivalent of $20,560.

-4-

category of VI resulted in a guideline range of 151–188 months. (*Id.* at 46). The Court granted Movant's motion for a downwards variance, reduced Movant's criminal history category to V, and imposed a below-guideline sentence of 140 months. (*Id.* at 50).

On direct appeal, Movant argued generally that the district court erred by converting the $20,000 found in the love seat to its crack cocaine equivalent. Movant further argued that his sentence violated his substantive due process rights because of the disparity between crack cocaine and powdered cocaine in the sentencing guidelines. On April 17, 2009, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed Movant's conviction and sentence. *United States v. Dixon*, 322 F. App'x 348 (4th Cir.), cert. denied, 130 S.Ct. 267 (2009).

On September 27, 2010, Movant filed a Motion to Vacate Sentence by a Person in Federal Custody pursuant to Title 28, United States Code, Section 2255. (Docket No. 80). On October 6, 2010, Movant filed a Motion to Re-Characterize Petitioner's Motion and to Amend Pursuant to Federal Rule of Civil Procedure 15(a). (Docket No. 86). Respondent filed a response on March 11, 2011. (Docket No. 100). Movant replied on May 25, 2011. (Docket No. 103).

**II.      Summary of Arguments**

Movant asserts that Respondent (1) "failed to apply for permission to prosecute" Movant; (2) failed to apply for permission "to submit any evidence to a Federal Grand Jury;" and (3) engaged in prosecutorial misconduct by Respondent's "failure to correct the false testimony of a government witness."

(Docket No. 86 at 1). Movant argues that because the United States Attorney General, President Bush, and Secretary of the Treasury Paulson did not authorize Movant's prosecution, the federal grand jury that indicted him was improperly convened and, thus, the indictment and subsequent prosecution were invalid. (Docket No. 80 at 1–2). Citing a variety of U.S. Supreme Court cases, federal statutes, and various provisions of the United States Constitution, Movant argues that his conviction should be overturned because of Respondent's failure to follow the proper procedures in initiating Movant's indictment and prosecution. (*Id.*). Further, Movant alleges that, at sentencing, Respondent introduced false testimony of DEA Special Agent Bevins regarding the packaging of the $20,000 discovered in Claimant's love seat.[3] (Docket No. 86 at 1–2). Movant asserts that this false testimony was prejudicial and enhanced the sentence he received. (*Id.* at 2). In response, Respondent argues that Movant's claims are procedurally defaulted as a result of Movant's failure to raise these arguments on direct appeal. (Docket No. 100 at 7, 10).

## III.   **Standard of Review**

The relevant portion of 28 U.S.C. § 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose

---

[3] According to Movant, "Agent Bevins testified that the money was stored consistently with the way drug dealers stored their money, that being in thousand dollar stacks, wrapped in rubber bands, and that the petitioner's money was packaged in this fashion.  Petitioner is currently fighting forfeiture, the government in it's [sic] discovery package included color photo's [sic] of he [sic] money that was stored in the love seat, and clearly shows that the money was not packaged as Agent Bevins testified."  (Docket No. 86 at 2).

such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the Court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 motion seeks to deny, evade, or impeach a judgment entered in another proceeding, claims of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion.

Nonetheless, the availability of a § 2255 motion does not supplant or obviate the need to file a direct appeal. In fact, the United States Supreme Court has made it clear that the failure to raise a claim on direct appeal may result in a procedural default, barring that claim for purposes of collateral attack. The Court explained that "a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady,* 456 U.S. 152, 165 (1982). Consequently, nonconstitutional claims that *could have* been raised on direct appeal, but were not, may not be asserted in collateral proceedings. *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976) (citing *Davis v. United States*, 417 U.S. 333, 345-346 n. 15 (1974); *Sunal v. Large*, 332 U.S. 174, 178–79 (1947)); *see also United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009) ("A petitioner who waives the right to appeal is

not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that *could have* been raised on appeal.") (quoting Brian R. Means, *Fed. Habeas Practitioner Guide,* Jurisdiction ¶ 1.23.0 (2006/2007)) (emphasis in the original) (internal citations omitted). Nonconstitutional claims that *could not have* been asserted on direct appeal can be raised on collateral review only if the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice" *Stone*, 428 U.S. at 477 n.10 (quoting *Davis*, 417 U.S. at 346; *Hill v. United States*, 368 U.S. 424, 428 (1962)) or is "inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 784 (1979).

A constitutional error that could have been, but was not raised on appeal may not be raised for the first time in a § 2255 motion, unless the movant can show either (1) "cause" that excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain the collateral attack. *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982)); *United States v. Mikalajunas,* 186 F.3d 490, 492–93 (4th Cir. 1999). To establish "actual prejudice," the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. *Satcher v. Pruett,* 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier,* 477 U.S. 478, 494 (1986)). To demonstrate a miscarriage of justice, the movant must prove "actual innocence" of the crime for which he was convicted, substantiating that "it

is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 621.

Generally, when assessing the validity of a § 2255 motion, the reviewing Court isolates issues that have already been rejected on appeal and dismisses them as procedurally barred. Next, the Court identifies claims that are procedurally defaulted and—to the extent that they allege constitutional issues for which the movant is unable to show cause and actual prejudice or a miscarriage of justice— summarily disposes of them. After completing these tasks, the Court can address the substance of the remaining claims. If the movant is clearly unable to state a claim that entitles him to relief, the Court may deny the Motion without the need for an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970)

## IV.   <u>Effect of Movant's Guilty Plea on His § 2255 Claims</u>

A guilty plea generally alters the sequence of the Court's evaluation, because a voluntary and intelligent guilty plea significantly diminishes the availability of § 2255 claims and renders unnecessary an assessment of their constitutional versus non-constitutional nature. A voluntary and intelligent guilty plea amounts to an admission of the material elements of a crime. *McCarthy v. United States*, 394 U.S. 459, 466 (1969). As such, a valid guilty plea constitutes a waiver of all claims relating to non-jurisdictional errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations. *U.S. v. Partlow*, 301 Fed.Appx. 297 (4th Cir. 2008) (citing *Tollett v. Henderson,* 411 U.S. 258, 267 (1973)); *See also United States v. McCleary,* 112 F.3d 511, 1997 WL 215525 (4th Cir.

-9-

1997) (unpublished). In *McCleary,* the Fourth Circuit stated this principle as follows:

> In *Tollett,* the Supreme Court explained that 'a guilty plea represents a break in the chain of events which has preceded it in the criminal process.' As a result, '[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea.' Instead, once a criminal defendant has pled guilty, collateral review is limited to an examination of 'whether the underlying plea was both counseled and voluntary.'

*Id.* at *2, citing *United States v. Broce,* 488 U.S. 258 (1973) (internal citations omitted). As stated, a collateral challenge in the context of a guilty plea is normally limited to attacking the voluntary or intelligent nature of the plea. The "focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S. at 266.

## V.    Analysis

Based on the aforestated standards, the undersigned will address the claims raised in Movant's § 2255 Motion. "[B]ecause the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," *United States v. Magini,* 973 F.2d 261, 264 (4th Cir. 1992), the undersigned finds that it is unnecessary to hold an evidentiary hearing in this matter.

### A.    Grand Jury Indictment

Movant argues that Respondent lacked the authority to submit evidence to a grand jury and that the subsequent indictment and conviction of Movant were consequently invalid. Specifically, Movant challenges the authority of the United

States Attorney to indict him by grand jury because "the Attorney General's Office of the United States did not issue an authorization letter to the local United State's Attorney's Office . . . to submit any evidence to a Federal Grand Jury." (Docket No. 80 at 1). The undersigned finds this argument to be waived in light of Movant's voluntary guilty plea.

Here, Movant has made no allegations that his guilty plea was not voluntary or intelligent nor do the facts indicate that Movant's plea was anything but voluntary and intelligent. Movant signed a written plea of guilty on May 12, 2008 in the presence of his counsel. (Docket No. 34). At the guilty plea hearing conducted the same day, the district court engaged in a thorough plea colloquy with Movant regarding Movant's intention to plead guilty. (Docket No. 40 at 3–4, 9–13, 17–24). The district court questioned Movant at length regarding any mental or physical impairments that would prevent him from understanding the proceedings and regarding Movant's understanding of the plea agreement itself. (*Id.*). Movant explained in his own words the underlying factual basis of his guilty plea. (*Id.* at 11–13). The district court then explained the potential penalties and the consequences of Movant pleading guilty. (*Id.* at 17–24). Based on this evidence and in light of the fact that Movant does not allege otherwise, the undersigned is confident that Movant's guilty plea was voluntary and intelligent.

A valid guilty plea constitutes a waiver of all claims relating to non-jurisdictional errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations. *U.S. v. Partlow*, 301 Fed.Appx. 297 (4th Cir. 2008) (citing *Tollett v. Henderson,* 411 U.S. 258, 267 (1973)). This includes claims,

as Movant raises here, of an illegally constituted grand jury and invalid indictment. *See e.g.*, *Tollett v. Henderson*, 411 U.S. 258 (1973); *Hall McKenzie*, 575 F.2d 481 (4th Cir. 1978). Moreover, as an allegedly defective indictment does not deprive a district court of jurisdiction,  *United States v. Cotton,* 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), Movant waived his right to challenge the validity of the indictment with the acceptance of his guilty plea.

### B.    <u>Prosecutorial Misconduct</u>

Movant argues that Respondent is guilty of prosecutorial misconduct due to Respondent's knowing use of false or perjured testimony at Movant's sentencing hearing. (Docket No. 86 at 1). According to Movant, Respondent wrongly introduced false testimony of DEA Special Agent Bevins regarding the manner in which the $20,000 found in Movant's love seat was packaged. (*Id.* at 1–2). Specifically, Movant argues that Special Agent Bevins' statement that the currency was found in stacks of $1,000 wrapped in rubber bands was false. (*Id.* at 2). Movant emphasizes that, in contrast to Special Agent Bevins' testimony, pictures of the currency in question at the time of its seizure show that there were no rubber bands wrapped around the currency.[4] (*Id.*). Movant argues that this is consistent with his mother's testimony that $11,300 of the total amount seized was

---

[4] Movant alleges that he was not aware that Special Agent Bevins' testimony was false until Respondent initiated civil forfeiture proceedings against him at which time he "discovered" that photographs of the $20,000 contradicted Bevins' testimony. Of course, Movant does not explain why he did not comment on Bevins' error at the time of the hearing, since Movant certainly must have known the manner in which he stashed his money. Moreover, Respondent provided Movant with the same photographs as part of discovery in February 2008, three months prior to Movant's guilty plea and seven months before Agent Bevins testified at the sentencing hearing. Therefore, Movant's claim of prosecutorial misconduct could have been raised on direct appeal to the Fourth Circuit as he had knowledge of the discrepancy between the photos and Bevins' testimony at the time of his direct appeal.

the result of family contributions to serve as a down payment on a home for Movant and his family, as opposed to the proceeds of drug trafficking. (*Id.*). The district court disagreed and found Movant liable for the crack cocaine equivalent of $20,560. Therefore, Movant argues, because the district court credited Bevins' false testimony, Movant received a harsher sentence than what he would have otherwise received. (Docket No. 86 at 2).

As discussed *supra*, alleged errors at the trial court level that were non–constitutional in nature and could have been, but were not raised on appeal may not be raised for the first time in a § 2255 motion. *Bousley v. United States,* 523 U.S. 614 (1998). A constitutional error that could have been, but was not, raised on appeal may not be raised for the first time in a § 2255 motion, unless the movant can show either (1) "cause" that excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain the collateral attack. *Unites States v. Mikalajunas,* 186 F.3d 490 (4th Cir. 1999).

The Supreme Court has not enumerated all of the specific circumstances under which prosecutorial misconduct rises to the level of constitutional error. The case law indicates that the most condemnable comments or conduct are those that infringe upon a defendant's specific right, such as the privilege against compulsory self-incrimination or the right to counsel. *Darden v. Wainwright,* 477 U.S. 168, 182 (1986); *Donnely v. DeChristoforo,* 416 U.S. 637, 643 (1974). When specific constitutional rights are involved, the Supreme Court has stated, "special care [must be taken] to assure that prosecutorial conduct in no way impermissibly

infringes them." *DeChristoforo,* 416 U.S. at 643. Another circumstance under which prosecutorial misconduct can rise to the level of a constitutional violation is where the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*

In the present case, the alleged prosecutorial misconduct does not rise to the level of a constitutional error. The inaccurate testimony of Special Agent Bevins presented by Respondent at Movant's sentencing hearing regarding the manner in which the $20,000 found in Movant's love seat was packaged did not infringe a specific constitutional right nor did it infect the sentencing hearing (trial) with unfairness as to make the resulting sentence a denial of due process. Movant makes no argument to the contrary. On direct appeal to the Fourth Circuit, Movant's counsel did not raise any claim of prosecutorial misconduct. Nonconstitutional claims that *could have* been raised on direct appeal, but were not, may not be asserted in collateral proceedings. *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976) (citing *Davis v. United States*, 417 U.S. 333, 345-346 n. 15 (1974); *Sunal v. Large*, 332 U.S. 174, 178–79 (1947)). As Movant failed to raise his claim of prosecutorial misconduct on direct appeal, that claim is procedurally defaulted and should be dismissed.

Assuming *arguendo* that the prosecutorial conduct alleged by Movant constituted a constitutional error, Movant has failed to establish cause that excuses his procedural default coupled with actual prejudice resulting from the alleged error. Movant was presented with the photos that revealed the inaccuracy in Special Agent Bevins' testimony in February 2008 prior to his guilty plea and

sentencing. "'[A] petitioner cannot establish cause when the facts underlying the claim were in existence and were available upon a reasonably diligent search,' and here, the facts underlying [the petitioner's] challenges ... were available at [the petitioner's] sentencing." *United States v. Pettiford,* 612 F.3d 270, 281 (4th Cir. 2010) (quoting *Rose v. Lee,* 252 F.3d 676, 687 (4th Cir. 2001)). Therefore, Movant is unable to establish cause that excuses his procedural default as the facts underlying Movant's challenge were in existence prior to his direct appeal. Even if Movant were able to establish cause that excuses his procedural default, Movant is unable to demonstrate that Respondent's presentation of Bevins' testimony resulted in actual prejudice. To establish "actual prejudice," the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. *Satcher v. Pruett,* 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier,* 477 U.S. 478, 494 (1986)). Movant alleges that Respondent's introduction of Bevins' inaccurate testimony resulted in him receiving a harsher sentence than what he otherwise would have received. Movant contends that Special Agent Bevins' inaccurate testimony prejudiced the District Court's finding that all $20,000 of the currency found in Movant's love seat should be considered drug proceeds and converted to its crack equivalent. However, as the District Court aptly noted at sentencing, even if Movant was credited with the $11,300 that his mother testified as having come from family contributions, the remaining sum would be converted to its crack cocaine equivalent and would still total over 150 grams and result in the same recommended guideline range. (Docket No. 100-1 at 153). Regardless of Bevins' testimony, the same sentencing

guideline range would have been recommended for Movant. Therefore, Movant suffered no "actual and substantial disadvantage" as a result of Bevins' testimony and his claim of prosecutorial misconduct was procedurally defaulted by his failure to raise it on direct appeal.

## VI.     **Proposal and Recommendations**

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the proposed findings and **RECOMMENDS** that**:**

1.      Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket No. 80 and 86) be **DENIED;**

2.      Movant's requests for an evidentiary hearing and the appointment of counsel contained in his initial Motion (Docket No. 80) be **DENIED;** and

3.      This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

Movant is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and

Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, the Respondent, and any counsel of record.

**FILED:** November 3, 2011.

Cheryl A. Eifert
United States Magistrate Judge

-17-